Peleger, ' J.
William Hieatt, Sr., had five children, one son named William, and four daughters named respectively Susan AY. Simpson, Harriet W. Bean, Mary H. Black and Olive W. Matson. His son William attained his majority May 22, 1867, and died April 27, 1904, leaving the plaintiff, Estella R. Hieatt, as his only child and heir at law. The four daughters and their children are all alive, and are defendants in this action. William Hieatt, Sr., died in 1866, leaving a will which was dated April 16, 1857. The testator was possessed of a large farm of about one hundred and sixty-seven acres in Sycamore township, and of other property in the city of Cincinnati. By the terms of his will he made provision for the education of all of his children, the amount of which he directed should not be deducted from their shares. lie gave, besides other bequests, $3,000 to each of his four daughters. He also gave a life estate to his widow in this fann unless his son William lived until his majority whereupon he should have the use of the farm during his life. He gave to the son also his watch, gun and other personal property used for his personal enjoyment.
Thereafter he made the following disposition of his property;
“Item 5. It is my will and 1 hereby devise and bequeath that all the rest and residue of my said estate not hereinbefore disposed of and remaining after the foregoing devises and bequests shall have been satisfied, be divided' equally among all my children share ahd share alike to have and to hold •to- *515 them and each of them for his or her natural life and no longer.
"And after the death of any of my children his or her said share shall go to and become the property of his or her child or children in fee simple forever, but if any of my said children shall die without a child or children living at his or her death then the share hereby devised to any such of my children so dying shall fall into and become part of the residuum of my estate and be divided and distributed as though it had never come to the said child so dying among my other children for life and afterwards to their issue forever as hereinbefore just directed as though the devise for life to any such of my children so dying had not been made.”
The residence situated upon the farm was destroyed by fire while occupied by the son. The proceeds of the insurance, amounting to $3,000 after payment of costs and expenses, were, under a proceeding brought in this court, invested in two small farms in Montgomery township, and the title taken to William Hieatt for life with remainder over as provided in the will of William Hieatt, Sr., deceased. The plaintiff as the only child of William Hieatt, Jr., after the death of the latter took possession of these three farms, claiming title thereto in fee simple, as well as a fee simple title in one-fifth of the other property left by the testator. The defendants claim that the four. daughters of the testator are entitled to a life estate as to four several one-fifths thereof for their respective lives, with remainder in fee simple to such four-fifths thereof as their children, surviving them, in all the property of the testator, including the farm in question. The interest of Olive W. IT. Matson was conveyed to the plaintiff by quit-claim deed. The plaintiff therefore prays for a decree quieting her. title against the other defendants in the case. To the answers setting up the interests of the defendants as claimed and to the affirmative relief demanded by them against the plaintiff for quieting title, the plaintiff filed a general demurrer, alleging that the answers did not contain facts sufficient to constitute a cause of action. It is agreed that this demurrer raises fully all issues necessary to detei'mine the title to all the property left by the decedent.
It is not disputed that the two tracts in Montgomery town *516 ship purchased with the insurance money passed to the same beneficiaries entitled to the'farm. Neither can it be denied that the widow of the testator took a life estate in the farm subject to the son William Hieatt reaching his majority. Nor can it be questioned that the son William was entitled to a life estate in the same farm from the time of his majority until his death. The four daughters of the testator claim that after the death of William Hieatt, Jr., they took a life estate in four several one-fifths of the property described in the petition with remainder in their children, and that the plaintiff took only an undivided one-fifth interest in fee simple in this as well as all the other real estate left by the testator.
'The determination of this question depends upon the construction to be placed upon the two paragraphs in Item 5 of the will. The testator directs that the residue of his estate thereinbefore disposed of and which remained after the life estate of William be equally divided among all his children share and share alike, but for life only and no longer. Up to this point in the will, the deceased made no devise in fee, and had created only a conditional life estate in the widow and son of but one tract, to-wit, the farm in question. It is argued by defendants’ counsel that where a remainder over is limited in contingency by a devise, the reversion descended under the statute to the heirs at law .until the contingency provided for in the will happens and takes it out of them. (Gilpin v. William, 25 Ohio St., 283.)
I fail to see the application of this rule to the case at bar. Admitting the possession of the defendants as heirs at law in the interim, they are either divested by themselves as devisees under the will, or by the plaintiff as sole devisee. The principle could only aid them in the absence of a further provision respecting the disposition of the fee.
It is also contended that the intention of the testator is plain that all the children should share alike in his remaining property, and that the remainder in fee of the farm was part of the estate undisposed of, and that it passed to all the children or *517 their representatives under this clause. There can be no doubt that the remainder in fee in the farm was undisposed of, but whether it passed under the first paragraph of Item 5 is not so clear. The testator did not create anything more than a life estate in the residue of his property to any of his children. lie omitted the mention of any of his grandchildren in this clause. The testator must have been aware of the life estate in. the farm granted to his only son AYilliam, and yet he included his son in the habendum clause, to-wit, “To have and to hold for Ms or her natural life and no longer.” The use of the masculine pronoun “his” refers to some son, and he has had but one son, named William; and conceding that the will was drawn at a time when he could not have foretold the number of his male children, it can not be questioned that he must have had in mind the fact that in Item 2 he had therefore carved out a life estate in the farm to this son William. In the light of the interpretation that this first paragraph in Item 5 includes the farm, the devise would read substantially as follows: “Having given to my son William as an entirety the farm for his full natural life, I now direct that after his death and the devise to him shall have been satisfied, this farm and all the other property be given again for life to all my children, to-wit, to ■my four daughters and my son AYilliam in the proportion of one-fifth to each.” The life interest of AYilliam in the farm would thus be in a most complicated state. If the testator had had this farm only it would not have been so difficult to adopt the construction that he intended to create life estates in- the farm, first in AYilliam, and in ease of his death before the four daughters, a life estate in the latter, and by the subsequent paragraph in Item 5 a remainder to the children of these four daughters. This construction is not insisted upon however by defendants’ counsel. Nor could this well be sustained because Section 5971, Revised Statutes, would prevent the lapsing of the devise to William and because the last paragraph in Item 5 again refers to the children of 'sons as well as of daughters and would give to AYilliam’s child at least a one-fifth shgxe,
*518 Let us view this provision from the standpoint claimed by counsel for plaintiff. He insists that the testator considered the farm disposed of, and that when the first paragraph of Item 5 was under consideration the testator had in mind property which was undisposed of so far as the life estates were concerned because he created only life estates in' this clause, and' that when .the testator used the words “his or her natural life,” he intended to give something additional to the son as well as to the daughters, or at least that he intended the child of William to have a share in the remainder, and that this is borne out by the second clause of Item 5.
To reach' some logical conclusion, let us see whicfy one of these constructions fits into the contingencies apparent in this subsequent paragraph. The paragraph provides that after the death of any of his children “his or her said share shall go to and become the property of his or her child or children in fee simple forever,” but that if any of his children should die •without children living at the date of any son’s or daughter’s death, the share thereby devised should go .to the testator’s other children for life, and to the latter’s children In remainder. The main object of the testator was evidently to keep the estate among his lineal descendants. Whatever grants of fee simple title were made to any of his beneficiaries must be found in this last clause. That the residue of his estate should be divided only among his four daughters can not be maintained because, as has been said, he refers to children of the masculine gender, and because he also mentions the death of any of his children, and this would include William. ^
The plaintiff insists that the word “share” and the words “share hereby devised” are applicable to the life estate of William under Item 2. The defendants on the other hand argued that the words referred to the shares provided for in the first paragraph of Item 5. In the absence of other more -specific language it is susceptible of either construction. In .order to ascertain which is the more consistent, we must have reference' again .to the first paragraph in Item 5. According to defendants’ construction “his share” refers to something *519 William received under the first clause of Item 5. lie either received an additional one-fifth life interest in property other than the farm or he was given no life estate thereunder. If “his share” refers also to an additional one-fifth life interest in the other property, it must be conceded that “his share” under Item 2 passed to his child. If William received nothing under the first clause of Item 5, then the words “his share” under the second clause must-necessarily refer to his life estate under Item 2, passing in remainder to his child. In order to give William a one-fifth life estate in all the property, or his child a one-fifth interest in remainder of all the property, it would be essential to find something devised to William in the first paragraph of Item 5. It will not do to say that because the testator expressed the desire to divide eciually among all his children the residue of his property, and because the remainder in fee of the farm had at that point not been disposed of, it follows that one-fifth of the entire property passed to the child of William, and four-fifths of the same property passed for life to the four daughters. This might be true if this clause stood alone or if it did not disagree with the other provisions in the will. According to defendants’ theory the four daughters now have only a life estate in four-fifths of this farm. If the plaintiff has a one-fifth interest in fee simple in remainder by virtue of the one-fifth share which her father got under the first clause of Item 5, it follows that one-fifth life estate in the farm is nowhere, or could not have been enjoyed because it did not take effect until the former devise for life to William under Item 5 had been satisfied, or the child of William succeeded her father with a remainder of one-fifth in fee based upon the life estate to her father in the whole, which life estate exhausted the smaller one-fifth interest for life and which is not in the four daughters. The latter must be the theory to sustain defendants ’ contention.
Would it be unreasonable to believe that the testator, when he referred to the former devises and bequests having been satisfied, had in mind principally the bequests of personalty (some of which, he gave precedence by emphasis), rather than *520 the two devises for life on this farm? With this reference so applied or entirely omitted, and the clause reading that the rest and residue of his estate not thereinbefore disposed of, be divided into five parts but for life solely, it would be quite consistent with plaintiff’s theory that he considered the farm disposed of, because he was then disposing of life estates, only, and gave to all of his children (including William) an equal one-fifth for life in the remaining real estate, with remainder in fee to their children respectively. It would harmonize all the provisions of the will.
AVhat would have been the situation had William abandoned his life estate or forfeited the same, or had he died before he reached the age of majority leaving a child, would furnish no guide to the solution of the present problem. Quite likely another life estate in the remaining four daughtérs would have been carved out of the farm, but his child would under the section of the statute heretofore cited have been entitled to the father’s share in remainder. AYhat the nature and extent of this share would have been under such circumstances would only have brought us to the same debating point.
Possibly the testator had under consideration the termination of William’s life estate by forfeiture, abandonment or disqualification when he made reference to the devises and bequests having been satisfied. If this view of it be true, it would furnish another argument in favor of the construction now found by the court that the testator considered the farm disposed of under Item 2.
Much as I would have preferred to divide the fee simple estates equally among all the children, per stirpes, as claimed by counsel for defendants, I am constrained to believe that the testator made this equality to all, subject to the favoritism shown the son William, and that the residue of the property which the testator could divide equally among his children for life was that other than the farm in question (which could not again be enjoyed by the son for life), and- that the share of AVilliam which passed to his child in fee simple, referred to in *521 tbe latter clause of Item 5, was this farm and a one-fifth interest in the other property.
W. T. Porter, for plaintiff. •
Worthington (& Strong, Miller Outcalt and Joseph Tleintsman. for defendants.
I do not think that the language of Item 8 giving the widow the right to withhold the possession of the life estate to the daughters and the investments of the proceeds of any of their shares and the keeping together of such shares, affects' the interpretation here given, inasmuch as this item has reference solely to the interests of the daughters. . •
Nor do I think it necessary for the determination of this case to invoke the rule of interpretation favoring the immediate vesting of estates as found in Linton v. Laycock, 33 Ohio St., 128-134, and the enlargement of estates into fee simple titles indicated in Carter v. Reddish, 32 Ohio St., 1.
The demurrers to the answers of each and all of the defendants will be sustained, and unless defendants desire to plead further a decree will be entered in favor of the plaintiff, Estella E. Ilieatt, quieting her title in fee simple to the three farms mentioned in the petition and to one-fifth of all the remaining property of the testator as against all the defendants. Costs may be divided equally between the plaintiff and defendants.